# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DIAMOND RESORTS INTERNATIONAL, INC., *et al.*,

    Plaintiffs

v.

REED HEIN & ASSOCIATES, LLC, *et al.*,

    Defendants

Case No.: 2:17-cv-03007-APG-VCF

**Order Granting in Part and Denying in Part TET and Happy Hour's Motions to Dismiss**

[ECF Nos. 87, 88, 104]

Plaintiffs Diamond Resorts, International, Inc. (DRI); Diamond Resorts Corporation (DRC); Diamond Resorts U.S. Collection Development, LLC (US Collection); and Diamond Resorts Management, Inc. (DRM) (collectively, Diamond) allege that the defendants falsely claimed to consumers that they had a proprietary method to "exit" timeshare agreements with Diamond, when in reality they had no such method and often resorted to breaching the agreements. Diamond asserts causes of action for intentional interference with existing contractual relations, intentional interference with prospective economic advantage, direct and contributory false advertising in violation of the Lanham Act, violations of the Nevada Deceptive Trade Practices Act (NDTPA), and civil conspiracy.

Judge Richard F. Boulware dismissed all of Diamond's claims except for its intentional interference with contractual relations claim, but he granted leave to amend. Diamond filed an amended complaint adding parties and claims.[1] Defendants Brandon Reed, Trevor Hein, Thomas Parenteau, Reed Hein & Associates, LLC dba Timeshare Exit Team (TET) (collectively,

---

[1] The amended complaint was not filed in a searchable format. Local Rule IA 10-1(b) requires documents filed electronically to be in a searchable format. The parties are advised to comply with this and all other Local Rules going forward.

the TET defendants), and Happy Hour Media Group, LLC (Happy Hour) move to dismiss Diamond's amended complaint. I grant the motions in part because Diamond fails to allege that DRI, US Collection, and DRM have standing and fails to plead its NDTPA claim with the requisite specificity. But I deny the motions in all other respects.[2]

### I. BACKGROUND[3]

Diamond develops, owns, operates, and manages vacation membership resorts.[4] It sells timeshare interests in those resorts, which require purchasers to pay maintenance fees and annual assessments in perpetuity.[5] Purchasers contract directly with Diamond-owned development entities or with US Collection.[6]

As its name "Timeshare Exit Team" suggests, TET offers a "'cancellation' or 'exit' service that purports to 'guarantee' a 'safe' and 'legitimate' termination" of timeshare agreements with companies like Diamond.[7] Defendants Reed and Hein co-founded TET.[8] Reed is TET's Chief Executive Officer, and defendant Parenteau is TET's Chief Operating Officer.[9] Reed and Hein formed Happy Hour as TET's "in-house marketing agency."[10]

---

[2] Diamond moves for leave to file a notice of supplemental authority regarding *Wyndham Vacation Ownership v. Reed Hein & Assocs.*, LLC, No. 6:18-CV-02171-GAP-DCI, 2019 WL 3934468 (M.D. Fla. Aug. 20, 2019). ECF No. 104. Having reviewed the motion and the defendants' opposition, I deny Diamond's motion. But that does not mean I cannot review relevant legal authority to the extent I find it persuasive.

[3] The facts set forth below are a summary of Diamond's allegations relevant to the motions filed by the TET defendants and Happy Hour.

[4] ECF No. 59 at ¶ 7.

[5] *Id.* at ¶¶ 7, 34.

[6] *Id.* at ¶¶ 7, 9.

[7] *Id.* at ¶ 36.

[8] *Id.* at ¶¶ 135-136.

[9] *Id.* at ¶¶ 136-137.

[10] *Id.* at ¶ 20.

2

With Happy Hour's assistance, TET solicits timeshare owners through its website, on the radio, on social media, in newspaper articles, and through paid endorsements.[11] As relevant here, these advertisements include claims that: (1) TET provides "exit" or "cancellation" of a timeshare agreement; (2) TET has a "process" or "method" that results in termination of a timeshare agreement without obligations; (3) TET offers a "legal," "lawful," "legitimate," or "safe" method of terminating a timeshare agreement; (4) TET offers "guaranteed" means of terminating a timeshare agreement; and (5) TET's service allows owners to stop paying fees, mortgage payments, or other contractual obligations.[12] Diamond's amended complaint identifies specific statements on TET's website that fall into each of these categories.[13]

Diamond alleges that each of these representations is false or misleading because, among other reasons, Diamond's consent is required to terminate a timeshare agreement in the manner TET's advertisements promise.[14] Instead, TET's exit methods include breach of the timeshare agreement, resulting in foreclosure and a severe negative impact to the purchaser's credit.[15]

## II. DISCUSSION

### A. Standard

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."[16] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the

---

[11] *Id.* at ¶¶ 38-41, 94.
[12] *Id.* at ¶ 97.
[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 100.
[16] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3

elements of a cause of action."[17] "Factual allegations must be enough to rise above the speculative level."[18] To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face."[19]

District courts must apply a two-step approach when considering motions to dismiss.[20] First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor.[21] Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations.[22] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[23] Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[24] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[25] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief."[26] When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed.[27] "Determining whether a complaint states a plausible claim for

---

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[18] *Twombly*, 550 U.S. at 555.
[19] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).
[20] *Id.* at 679.
[21] *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013).
[22] *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.
[23] *Iqbal*, 556 U.S. at 678.
[24] *Id.* at 679.
[25] *Id.* at 663.
[26] *Id.* at 679 (internal quotation marks and citation omitted).
[27] *Twombly*, 550 U.S. at 570.

4

relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense."[28]

Federal Rule of Civil Procedure 9(b)'s particularity requirement applies to Diamond's false advertising[29] and NDTPA claims sounding in fraud.[30] "Rule 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged."[31] Additionally, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false."[32] In sum, the plaintiff "must provide enough detail to give [the defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong."[33]

**B. Standing**

The moving defendants argue that DRM, DRI, and US Collection do not have standing because Diamond alleges that DRC "ultimately subsumes all the losses of its underlying development entities, and therefore, all of the damages, both current and future, as a result of litigation are encapsulated with DRC."[34] Diamond responds that DRM, DRI, and US Collection

---

[28] *Iqbal*, 556 U.S. at 679.

[29] *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (claims sounding in fraud are subject to Rule 9(b)).

[30] *See Horner v. Mortg. Elec. Registration Sys., Inc.*, 711 F. App'x 817 (9th Cir. 2017) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009)) (Rule 9(b) standard applies to fraud-based NDTPA claim).

[31] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).

[32] *Id.* (quotation omitted).

[33] *Id.* at 999 (quotation omitted).

[34] ECF No. 87 at 5 (quoting ECF No. 59 at ¶ 7).

each has a financial interest in the matter and that the allegation does not refer to DRM, DRI, and US Collection because they are not development entities.[35]

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"[36] "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit."[37] The "irreducible constitutional minimum" of Article III standing consists of three elements.[38] "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[39]

As the party invoking this court's jurisdiction, Diamond bears the burden of establishing these elements.[40] Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[41] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [I] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"[42]

---

[35] ECF No. 96 at 5-7.

[36] *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

[37] *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (quotation omitted).

[38] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation omitted).

[39] *Id.*

[40] *Id.*

[41] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[42] *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Diamond's amended complaint includes numerous allegations that DRM, DRI, and US Collection suffered injuries as a result of the defendants' conduct.[43] But Diamond's blanket allegation that DRC "ultimately subsumes all the losses of its underlying development entities, and therefore, all of the damages, both current and future, as a result of litigation are encapsulated with DRC" undermines the allegations of injury to DRM, DRI, and US Collection, making them implausible.[44] Although the fact that DRM, DRI, and US Collection are not development entities distinguishes the first part of the allegation, it does not explain Diamond's allegation that "all of the damages, both current and future, as a result of litigation are encapsulated with DRC." So I grant the motions to dismiss DRM, DRI, and US Collection's claims. But I grant leave to amend because Judge Boulware did not identify this deficiency in Diamond's initial complaint and it does not appear that amendment would be futile.[45]

### C. Intentional Interference Claims[46]

Happy Hour argues that Diamond fails to adequately plead its intentional interference with existing contractual relationships and intentional interference with prospective economic advantage claims because Diamond does not allege that Happy Hour intended timeshare purchasers to breach their agreements.[47] Diamond responds that the content of the advertisements themselves establish the elements of these claims.[48]

---

[43] *See, e.g.*, ECF No. 59 at ¶¶ 120, 178, 185.

[44] *Id.* at ¶ 7.

[45] *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

[46] The TET defendants do not move to dismiss Diamond's intentional interference with existing contractual relations and intentional interference with prospective economic advantage claims.

[47] ECF No. 88 at 9-12.

[48] ECF No. 97 at 6-7.

7

Under Nevada law, a claim for intentional interference with contractual relations requires proof of four elements: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage."[49] A claim for interference with prospective economic advantage under Nevada law requires proof of five elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant knew of the prospective relationship; (3) the defendant intended to harm the plaintiff by preventing the relationship; (4) the defendant's conduct was not privileged or justified; and (5) the plaintiff suffered actual harm as a result.[50]

Diamond alleges that Happy Hour created advertisements for TET that establish the elements of these claims. The advertisements solicit individuals who are parties to timeshare contracts with Diamond on the premise that TET can help them exit those contracts, suggesting knowledge of a contract and intent to disrupt it. And Diamond alleges that Happy Hour knew Diamond timeshare owners often upgraded their timeshares,[51] suggesting knowledge of prospective economic advantage and subsequent intent to harm by preventing the upgraded timeshares. The factual allegations do not suggest the presence of privilege or justification. Diamond also alleges actual harm from Happy Hour's intentional interference with existing and prospective business relationships.[52] So Diamond sufficiently pleads intentional interference

---

[49] *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (quoting *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)).

[50] *In re Amerco Deriv. Litig.*, 252 P.3d 681, 702 (Nev. 2011) (en banc).

[51] ECF No. 59 at ¶¶ 164-165.

[52] *Id.* at ¶ 171.

with existing contractual relationships and intentional interference with prospective economic advantage under the Rule 8 standard applicable to these claims.

**D. False Advertising**

The TET defendants and Happy Hour argue that Diamond's Lanham Act false advertising claims should be dismissed because there are no actionable false or misleading statements, Diamond fails to plead the false or misleading statements with particularity, Diamond fails to plead causation, Diamond's contributory false advertising claim against Happy Hour has not been recognized in the Ninth Circuit, and Happy Hour did not materially participate in the false advertising.[53] Diamond responds that the alleged false or misleading statements are actionable and pleaded with particularity, it has sufficiently alleged causation, and that its contributory false advertising claim against Happy Hour is cognizable and sufficiently pleaded.[54]

*1. Actionable False or Misleading Statements*

Section 43(a) of the Lanham Act creates a federal remedy against a person who, in connection with any goods or services, uses a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in commercial advertising that misrepresents the nature, characteristics, or qualities of the goods or services.[55] Under this section, only non-puffing "statements of fact capable of being proved false" are actionable.[56] "'Puffing' is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)."[57] "To demonstrate falsity within the meaning of

---

[53] ECF No. 87 at 6-16; ECF No. 88 at 12-16.

[54] ECF No. 96 at 6-17; ECF No. 97 at 8-11.

[55] 15 U.S.C. § 1125(a).

[56] *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

[57] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

9

the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."[58] To show that an advertisement was likely to mislead or confuse consumers, Diamond must allege that the advertisement "has misled, confused, or deceived the consuming public."[59]

Diamond has sufficiently alleged that each of the five categories of statements was false or misleading. Diamond adequately alleges that TET's advertisements that it could "exit" or "cancel" a customer's timeshare interest were literally false because TET could not provide such relief without Diamond's consent or misleading because Diamond owners were deceived into thinking that TET's services could lead to lawful release, termination, cancellation, or transfer of a timeshare contract.[60] Diamond alleges TET's advertisements that it had a "process" or "method" resulting in termination of a timeshare agreement were misleading because they suggest that TET had a proprietary method when in reality TET's method often involved breach and subsequent foreclosure.[61] TET's claims that its services were "legal," "lawful," "legitimate," or "safe" were also misleading because they deceived owners into thinking that TET's services could lead to a lawful release, termination, cancellation, or transfer of a timeshare contract rather than the breach of contract and foreclosure that TET often induced.[62] Diamond also alleges that

---

[58] *Id.* at 1139.

[59] *Id.* at 1140.

[60] ECF No. 59 at ¶ 96-97.

[61] *Id.*

[62] *Id.* The defendants argue that these statements are literally true because breach of contract is not unlawful under the efficient breach theory of contract law. These statements make out a plausible claim for relief because Diamond alleges why they were misleading, *id.*, and on a motion to dismiss for failure to state a claim I must accept all well-pleaded allegations as true. In any event, breach of contract without legal excuse may be described as unlawful or illegal, suggesting that dismissal on this ground is premature. *See* 23 Williston on Contracts § 63:1 (4th

10

TET's advertisements of a "guarantee" are false because that result requires Diamond's consent or misleading because Diamond owners were deceived into thinking that TET's guarantee promised a release other than breach and foreclosure.[63] Finally, Diamond sufficiently alleges TET's claims that its services allowed timeshare owners to be completely free of unwanted obligations were false because that result requires Diamond's consent.[64]

Nor do the allegedly false or misleading statements constitute non-actionable puffery. In this context, where customers face purportedly lifetime obligations to Diamond, a reasonable buyer would rely on TET's various claims regarding its service to terminate those lifetime obligations. Diamond has also pleaded these false statements with particularity by pointing to specific statements visible on TET's website and setting forth why each statement is false or misleading.[65] Diamond does not identify when or how long the statements appeared on the website, but this information is within TET's control and ascertainable on the basis of the allegations. In sum, Diamond's allegations give "notice of the particular misconduct which is alleged to constitute the fraud charged so that [the defendants] can defend against the charge and not just deny that [they have] done anything wrong."[66] So I deny the defendants' motions on this ground.

---

ed.) ("[A] breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract."); *cf.* Restatement (Second) of Contracts § 1 (1981) ("A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.").

[63] ECF No. 59 at ¶ 96-97.

[64] *Id.* The defendants argue that this claim is contradicted by customer agreements, but weighing the effect of the claims and customer agreements is a fact-intensive inquiry that is inappropriate on a motion to dismiss.

[65] *Id.* at ¶ 96.

[66] *Lungwitz*, 616 F.3d at 999.

11

*2. Causation*

Judge Boulware dismissed Diamond's Lanham Act claim in its initial complaint because it failed to plead causation between the alleged false statements and reputational harm to Diamond.[67] The defendants argue that Diamond again fails to plead causation between the false statements and its injuries.[68] Diamond responds that because it does not assert claims for reputational injury in its amended complaint, it need only allege that the false statements caused economic injuries.[69]

In *Lexmark International, Inc. v. Static Control Components, Inc.*, the Supreme Court of the United States outlined a two-part test for who has the right to bring a Lanham Act false advertising claim.[70] First, to come within the zone of interests protected by the Act, the plaintiff must "allege an injury to a commercial interest in reputation or sales."[71] Second, to establish proximate cause, the plaintiff must allege "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."[72] The Supreme Court specifically rejected the Ninth Circuit's test of whether the plaintiff and defendant were direct competitors, explaining that it "provides a bright-line rule; but it does so at the expense of distorting the statutory language."[73]

---

[67] ECF No. 49.
[68] ECF No. 87 at 14-16; ECF No. 88 at 15.
[69] ECF No. 96 at 13-15.
[70] 572 U.S. 118 (2014).
[71] *Id.* at 131-32.
[72] *Id.* at 133.
[73] *Id.* at 124, 136.

12

Diamond's central allegation is that TET solicited Diamond customers with deceptive advertisements and then induced them to breach their contracts with Diamond, thereby alleging an injury to its commercial interest in sales and bringing Diamond's claim within the zone of interests protected by the Lanham Act. And this injury flows directly from TET's allegedly deceptive advertisements of its own service, so Diamond also pleads proximate cause. The defendants argue in reply that Diamond must allege a competitive injury, but they rely on Ninth Circuit decisions that predate *Lexmark*.[74] So Diamond has adequately alleged that the defendants' false statements caused its injuries.

### 3. *Contributory False Advertising*

Diamond asserts a "contributory false advertising" claim against Happy Hour.[75] Although the Ninth Circuit has yet to recognize contributory liability for false advertising in violation of the Lanham Act, the Eleventh Circuit and a district court in the Ninth Circuit have recognized such a cause of action.[76] Under the Eleventh Circuit's elements of the claim, the plaintiff "must show that a third party in fact directly engaged in false advertising that injured the plaintiff" and "allege that the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it."[77] I apply these elements because they reflect the Ninth Circuit's test for contributory liability in other contexts.[78]

---

[74] ECF No. 101 at 7.

[75] ECF No. 59 at ¶¶ 199-209.

[76] *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015); *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-CV-05149 YGR, 2012 WL 4068632, at *3 (N.D. Cal. Sept. 14, 2012).

[77] *Duty Free Americas*, 797 F.3d at 1277.

[78] *See, e.g.*, *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing

13

As discussed above, Diamond has alleged that the TET defendants engaged in false advertising in violation of the Lanham Act, so they satisfy the first element. As for material participation, Diamond alleges that Happy Hour was formed by Reed and Hein as TET's "in-house marketing agency" and subsequently created and distributed TET's advertising campaigns online and through radio, television, and print media and other avenues.[79] Diamond also alleges that Happy Hour had knowledge of the false advertising.[80] So Diamond has adequately pleaded a contributory false advertising claim against Happy Hour.

**E. NDTPA Claim**

Judge Boulware noted that Diamond's initial NDTPA claim failed to "specifically identif[y] which sections and what would be the nature of the claim."[81] Diamond's amended complaint again fails to specify which of the various enumerated deceptive trade practices the defendants engaged in.[82] In opposing the motion, Diamond lists several deceptive trade practices and the factual allegations supporting those claims.[83] But Diamond is required to identify violations of the NDTPA and the facts supporting those alleged violations in its complaint.[84]

---

conduct of another may be liable as a contributory copyright infringer." (quotations and alternations omitted)).

[79] ECF No. 59 at ¶¶ 20, 94, 104-105.

[80] *Id.* at ¶¶ 203-205.

[81] ECF No. 49 at 4.

[82] ECF No. 59 at ¶¶ 210-17.

[83] ECF No. 96 at 17-18.

[84] *See Teodoro v. Allstate Fire & Cas. Ins. Co.*, No. 217-CV-02135-APG-VCF, 2018 WL 1786818, at *4 (D. Nev. Apr. 13, 2018) (dismissing claim where plaintiff did not identify specific violations of the NDTPA); *Reyes v. GMAC Mortg. LLC*, No. 2:11-CV-100-JCM-RJJ, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011) (same).

14

And because Rule 9(b) applies to these fraud-based NDTPA claims, Diamond is required to plead them with particularity. So I grant the defendants' motions on this ground.

In the hearing on the previous motions to dismiss, Judge Boulware identified these pleading deficiencies in the NDTPA claim and made clear that he wanted to review only one amended complaint.[85] He therefore gave Diamond almost six months to file an amended complaint. Yet Diamond failed to address these defects. I will give Diamond one final chance to properly plead this claim by way of amending its complaint.

**F. Civil Conspiracy Claims**

The moving defendants argue that Diamond's civil conspiracy claims should be dismissed because there are insufficient factual allegations to support them and the intra-corporate conspiracy doctrine applies.[86] Diamond responds that it alleges numerous specific acts and that the intra-corporate conspiracy doctrine does not apply because Hein, Parenteau, and Reed were acting as individuals for their own advantage and Happy Hour is a distinct entity.[87]

Under Nevada law, a civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts."[88] Diamond must allege two elements to plead a claim for civil conspiracy: (1) the commission of an underlying tort and (2) an agreement between the defendants to commit that tort.[89] However, "agents and employees of a

---

[85] ECF No. 49 at 25-26.

[86] ECF No. 87 at 19-22; ECF No. 88 at 17-20.

[87] ECF No. 96 at 18-20; ECF No. 97 at 12-14.

[88] *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted).

[89] *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

15

corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."[90]

The moving defendants point to this court's decision in *Sharda v. Sunrise Hospital & Medical Center, LLC* indicating that Diamond must "plead with particular specificity as to 'the manner in which a defendant joined in the conspiracy and how he participated in it.'"[91] But the case *Sharda* quotes addresses claims for civil conspiracy to commit fraud, invoking Rule 9(b)'s requirement of stating the circumstances constituting fraud "with particularity."[92] The civil conspiracy claim here is predicated on Diamond's intentional interference claims, so I apply the Rule 8 pleading standard.[93]

Diamond's amended complaint alleges an agreement to interfere with existing and prospective contractual relations[94] and provides descriptions of individualized behavior in furtherance of that goal.[95] Reading the amended complaint as a whole, the defendants have fair notice under Rule 8, and Diamond has established a basis for the claim. And the intra-corporate conspiracy doctrine does not bar dismissal for two reasons: (1) Diamond alleges that Reed, Hein,

---

[90] *Collins v. Union Fe. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).

[91] *Sharda v. Sunrise Hosp. & Med. Ctr., LLC*, No. 2:16-CV-2233-JCM-GWF, 2017 WL 2870086, at *10 (D. Nev. July 3, 2017) (quoting *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984)).

[92] *Arroyo*, 591 F. Supp. at 144 (D. Nev. 1984).

[93] ECF No. 59 at ¶¶ 221-223.

[94] *Id.* at ¶¶ 220-21, 223.

[95] *See, e.g.*, *id.* at ¶¶ 42-53 (TET); *id.* at ¶¶ 37, 124, 128-29 (Reed); *id.* at ¶¶ 37, 132, 136 (Hein); *id.* at 137 (Parenteau); *id.* at ¶¶ 105, 206 (Happy Hour).

and Parenteau acted as individuals for their own individual financial advantage[96] and (2) Happy Hour is a separate corporate entity[97] that is not a TET subsidiary.[98] So I deny the defendants' motions to dismiss on these grounds.

### III. CONCLUSION

I THEREFORE ORDER that Brandon Reed, Trevor Hein, Thomas Parenteau, and Reed Hein & Associates, LLC dba Timeshare Exit Team's motion to dismiss **[ECF No. 87]** and Happy Hour Media Group, LLC's motion to dismiss **[ECF No. 88] are GRANTED in part.** The plaintiffs' NDTPA claim (Count VI) is dismissed without prejudice. Plaintiffs Diamond Resorts, International, Inc.; Diamond Resorts U.S. Collection Development, LLC; and Diamond Resorts Management, Inc. are dismissed without prejudice.

I FURTHER ORDER that the plaintiffs may file an amended complaint by December 23, 2019 to properly plead the NDTPA claim and address the standing to bring suit of Diamond Resorts, International, Inc., Diamond Resorts U.S. Collection Development, LLC, and Diamond Resorts Management, Inc.

I FURTHER ORDER that the plaintiffs' motion for leave to file notice of supplemental authority **[ECF No. 104] is DENIED.**

DATED this 25th day of November, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[96] ECF No. 59 at ¶¶ 135-37 (Reed, Hein, and Parenteau each "tak[es] millions of dollars out of the company for his own, personal gain").

[97] *Id.* at ¶ 20.

[98] *Cf. Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 379 (Nev. 2007) ("Notably, because respondents are a parent company and its subsidiaries, they have no separate legal existence; thus it appears impossible for a civil conspiracy to have occurred." (quotation omitted)).