**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| DIAMOND RESORTS U.S. COLLECTION DEVELOPMENT, LLC, a Delaware Limited Liability Company, | 2:17-cv-03007-APG-VCF |
| Plaintiff, | |
| vs. | **ORDER** |
| REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, a Washington Limited Liability Company, *et al*, | MOTION TO COMPEL (ECF NO. 252); MOTION TO SEAL (ECF NO. 254); MOTION TO SEAL (ECF NO. 258); MOTION TO COMPEL (ECF NO. 264); MOTION TO SEAL (ECF NO. 266);  MOTION TO COMPEL (ECF NO. 278); MOTION TO SEAL (ECF NO. 280); MOTION TO COMPEL (ECF NO. 284); MOTION TO SEAL (ECF NO. 286); MOTION FOR SANCTIONS (ECF NO. 289); MOTION TO SEAL (ECF NO. 291); MOTION FOR A PROTECTIVE ORDER (ECF NO. 296); MOTION TO SEAL (ECF NO. 304); MOTION TO SEAL (ECF NO. 312); MOTION FOR LEAVE TO FILE AN ADDITIONAL EXHIBIT (ECF NO. 316); MOTION TO SEAL (ECF NO. 326); STIPULATION FOR EXTENSION OF TIME (ECF No. 331); MOTION TO SEAL (ECF NO. 335) |
| Defendants. | |

Before the Court are plaintiff Diamond Resorts U.S. Collection Development, LLC's ("Diamond Resorts" or "Diamond") motions to compel (ECF No. 252, 264, 278, 284), to seal (ECF No. 254, 258, 266, 280, 286, 291, 304, 326, and 335), for sanctions (ECF No. 289), and for a protective order (ECF No. 296). Also before the Court is defendant SGB, Goldmark & Bender's ("SGB") motion for leave to file additional exhibit (ECF No. 316) and to seal (ECF No. 312); and the parties' stipulation for an

1

extension of time (ECF No. 331). Diamond Resorts' motions to compel (ECF No. 252, 264, 278, 284) and for a protective order (ECF No. 296) are granted in part and denied in part. Diamond Resorts' motion for sanctions (ECF No. 289) is denied. Diamond Resorts' motions to seal (ECF No. 254, 258. 266, 280, 286, 291, 304, 326, and 335) are granted. SGB's motions (ECF Nos. 312 and 316) and the parties' stipulation (ECF No. 331) are all granted.

## I.    Background

Plaintiff Diamond Resorts, a timeshare company (ECF No. 157 at 1), brings claims against the defendants (various alleged "timeshare exit companies" and associated attorneys) for (1) intentional interference with existing contractual relations (claim 1); false advertising and contributory false advertising in violation of the Lanham Act, 15 U.S.C. 1125(a)(1) (claims 2-4); violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §598, 598A, 41.600, et seq. (claim 5); and civil conspiracy to commit tortious interference (claim 6). (ECF No. 157).

The Court held a hearing on the motions (ECF No. 341) and heard extensive arguments at the hearing regarding whether the attorney defendants' (Privett and SGB) could withhold certain documents pursuant to attorney-client privilege and/or work product. (ECF No. 341). Defendant Reed Hein  & Associates, LLC ("Reed Hein"), doing business as Time Share Exit Team, is not a law firm. Diamond alleges that Reed Hein hires law firms and attorneys to act on behalf of Reed Hein's customers, i.e. people who own unwanted timeshares.

## II.    Analysis
### a.    Plaintiff Diamond's Motion to Compel Defendant Ken Privett to Respond (ECF No. 252); Diamond's Motion to Compel Defendant SGB (ECF No. 278); and Defendant SGB's motion for leave to file additional exhibit (re: 310, its Response)

#### i.    Motion to Compel Privett (ECF No. 252)

Diamond argues in its motion to compel that attorney Ken Privett identified and withheld 2,100 documents based on claims of privilege (work-product and attorney-client privilege). (ECF 252 at 3). Diamond states that Privett provided a privilege log and through negotiations has provided supplements

to his discovery responses and updated his privilege log: however, the parties' negotiations came to a stand-still upon Privett's third supplement and third privilege log. (*Id.* at 5, see also third privilege log at 252-11). Diamond argues that Privett cannot establish that the work-product doctrine applies to any of the documents he wants to withhold because his engagement agreement with the clients states that, "no lawsuit is contemplated" and thus Privett could not have advised them about litigation. (ECF No. 252 at 10).

Diamond also argues that the Middle District of Florida previously held that Privett could not establish that documents he withheld in discovery were protected by attorney-client privilege. (*Id.*, citing to *Wyndham Vacation Ownership, Inc., v. Reed Hein & Associates, LLC*, 2019 WL 9091666 at 15 (M.D. Fla. December 9, 2019)). Diamond also argues that Privett cannot prove he had an attorney-client relationship with each individual owner. (ECF No. 252 at 11). Diamond also argues that the privilege log is insufficient. (*Id.*)

Privett argues in his response that he has produced thousands of documents in discovery, but that Diamond wants him to produce all his communications. (ECF No. 268 at 3). Privett argues that the timeshare owners executed a Power of Attorney to allow Reed Hein to retain him on their behalf. (*Id.* at 18). Privett argues that although his engagement agreement excluded litigation, the agreement also recognizes that he would be giving the timeshare owners legal advice, including the possibility of future litigation. (*Id.*)  Privett also argues that work-product doctrine protects the mental processes of an attorney, not just documents for use in litigation. (*Id.* at 11).

Diamond argues in its reply that Privett has not produced any evidence that he contemplated any lawsuits with the clients. (ECF No. 277 at 10). Diamond also argues that Privett has not produced any evidence that the clients sought legal advice from Privett. (*Id.* at 11).

### ii.   Parties' Arguments Regarding the SGB Motion to Compel (ECF No. 252) and Defendant SGB's motion for leave to file additional exhibit re: its Response (ECF No. 316); Stipulation for an Extension of Time Re: the Briefing Schedule for the Motion to File an Additional Exhibit (ECF No. 331)

Diamond also argues that defendant law firm Schroeter Goldmark & Bender's attorney-client privilege and work product objections are improper. (ECF No. 278 at 2). Diamond argues that SGB did not engage its clients for the purpose of litigation (i.e. its limited services agreements mean there is no work product immunity). Like Privett, it argues that the federal court in Florida found that SGB's limited-engagement agreements is not enough to carry the burden of proof regarding its work-product claims. (*Id.* at 5). Diamond claims that Reed Hein has produced many of the documents that both SGB and Privett seek to withhold, which amounts to a waiver of attorney-client privilege. (*Id.* at 7).

SGB argued at the hearing that Reed Hein served as an agent for the timeshare owners, but that at some point, SGB began communicating directly with individual timeshare owners and did not include Reed Hein in those communications. SGB could not point to a particular time frame at the hearing because the privilege log it produced to Diamond is categorical and not in chronological order. SGB argued at the hearing that in the beginning, Reed Hein served as an authorized agent acting on behalf of the clients pursuant to a power of attorney, but at some point later on, SGB did not include Reed Hein in its communications with timeshare owners. SGB argues that it communicated with the timeshare clients and that the limited engagement agreement does not preclude the application of the work product doctrine. (ECF No. 310). SGB argues that its legal services include giving its clients, the timeshare owners, legal advice about their contracts, advise about foreclosure proceedings, and advising the clients regarding the pros and cons of litigation. (*Id.* at 5).

SGB argues in its motion for leave to file additional exhibits to its response that it obtained a declaration of a timeshare owner that was not available at the time it filed its opposition. (ECF No. 316 at 2). SGB argues that the Court should consider the exhibit since it has the burden to show that the work product doctrine applies, and that attorney client privilege exists. (*Id.*) The declaration is from a

1     client, Doug Benenson, and he states that he retained SGB to represent him and he sought legal advice

2     regarding his time share from many of the attorneys at the firm, including email correspondence he had

3     with the attorneys. (ECF No. 316-1). Benenson declares that he does not waive his attorney-client

4     privilege. (*Id*. at 2)

5         Diamond argues that the Court should not consider the new evidence because it is untimely.

6     (ECF No. 332 at 2). SGB argues in its reply that it did not have the declaration before it filed its reply,

7     that it acted diligently, and that the Court finds consider the evidence given that SGB has the burden.

8     (ECF No. 339 at 2). The parties stipulated to an extension of time regarding the briefing schedule on the

9     motion for leave to file this exhibit. (ECF No. 331).

10                      **iii.  Discussion: Attorney-Client Privilege**

11         Rule 26(b)(1) authorizes discovery on "any nonprivileged matter that is relevant to any party's

12     claim or defense and proportional to the needs of the case." "The attorney-client privilege is the oldest of

13     the privileges for confidential communications known to the common law. *Upjohn Co. v. United States*,

14     449 U.S. 383, 389 (1981)); citing to 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). "Its

15     purpose is to encourage full and frank communication between attorneys and their clients and thereby

16     promote broader public interests in the observance of law and administration of justice." *Id.*  Attorney-

17     client privilege, "normally extends to both the substance of the client's communications as well as the

18     attorney's advice in response thereto," and to "papers prepared by an attorney or at an attorney's request

19     for the purpose of advising a client, provided that the papers are based on and would extend to reveal the

20     client's confidential communications." *In re Fischel,* 557 F.2d 209, 211 (9th Cir. 1977) (internal

21     citations omitted). The Ninth Circuit considers eight factors regarding attorney-client privilege: (1)

22     Where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such,

23     (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this

24     instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the

25

protection is waived. *Id.* The party asserting a privilege has the burden of establishing the applicable privilege. *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002). The burden to sustain a claim of privilege is heavy because privileges are "not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974).

The work product doctrine is a qualified immunity governed by the federal standard set forth in Rule 26(b)(3), which protects against the disclosure of documents and tangible things prepared in anticipation of litigation or trial by or for another party or its representative. *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486 (9th Cir.1989), citing Fed. R. Civ. P. 26(b)(3); see also *United States v. Nobles*, 422 U.S. 225, 236-37, 95 S. Ct. 2160, 2169 (1975).

"Application of the work product rule is addressed to the sound discretion of the court[.]" *Diamond State Ins. Co. v. Rebel Oil Co*., 157 F.R.D. 691, 699 (D. Nev. 1994) (internal citations omitted). The party asserting the work-product rule has the burden of establishing, for each document, the rule's application. *Id*. "The rule provides absolute immunity for "opinion" work product, i.e., documents which reflect an attorney's mental impressions, conclusions, opinions or legal theories; and a qualified immunity for all other "non-opinion" work product." *Id*.

"Documents are entitled to work product protection where, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." *United States v. Torf (In re Grand Jury Subpoena),* 357 F.3d 900, 904 (9th Cir. 2003). The work-product doctrine "is an intensely practical one" which protects materials prepared by attorneys and their agents." *United States v. Nobles*, 422 U.S. 225, 236, 95 S. Ct. 2160, 2169 (1975).

Part of Reed Hein's alleged business model is to serve as an intermediary between the timeshare owners and the law firms. At the hearing, SGB took the position that Reed Hein is not an intermediary, but rather an authorized agent acting on behalf of the clients pursuant to a power of attorney.  At the

hearing, the parties presented arguments regarding the allegedly privileged documents in a few categories. First, the Court addressed documents that Reed Hein produced in discovery and found that neither Privett nor SGB have met their burden to show that attorney/client privilege protects any of the documents that Reed Hein already produced to Diamond. Even if the Court were to adopt the attorneys' defense (that Reed Hein is an authorized agent of their clients) their claims of privilege regarding these documents would fail because if Reed Hein could act on behalf of their clients, then Reed Hein waived the privilege on behalf of their clients. Privett and SGB must produce the documents that Reed Hein already produced and remove those documents from the privilege log.

Next, the Court addressed communications where Reed Hein served as an intermediary between the timeshare owner and the attorneys. Under federal law, the agency exception provides that "[a]lthough voluntary disclosure of attorney-client communications to a third-party ordinarily waives the privilege, the privilege will not be waived if the disclosure was to an agent whose services are necessary for effective representation of the client's interests." See *La. Mun. Police Emps. Retirement Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (citation omitted).

Privett made only general arguments regarding the communications he passed through Reed Hein and failed to carry the heavy burden of showing that communications wherein Reed Hein served as an intermediary are protected by attorney-client privilege. Privett has not proffered any evidence that Reed Hein's service, to act as an agent for all the timeshare owners, hire attorneys on their behalf, communicate with the attorneys on their behalf, and make decisions on their behalf, were at all necessary for effective representation of the timeshare owners' interests. Privett has not carried his burden of showing that communications between him and Reed Hein, to be communicated to the clients, were communications made in confidence for the purpose of obtaining legal advice. Privett did not proffer that any of the individual timeshare owners ever sought legal advice of any kind from Privett or that he ever communicated with any of the individual owners in any meaningful way. Privett's use of

Reed Hein, a non-law firm, as an intermediary, supports a finding that Privett's claims that he had an attorney-client relationship with any of the owners is unreasonable.

SGB's arguments are more nuanced because SGB presented evidence that its relationship with Reed Hein changed over time. First, SGB argues that Reed Hein is an authorized agent of the timeshare owners, but SGB has also failed to carry its heavy burden in relation to the communications it passed through Reed Hein.  Although SGB presented evidence that it had a signed power of attorney for each timeshare owner, it did not provide any evidence that the powers of attorney for any particular timeshare owner, or that Reed Hein's agency, was reasonably necessary for effective representation of the clients. For the communications that SGB passed through or shared with Reed Hein, it has not met its burden to show that the communications were made in confidence between the attorney and the time share owner for the purpose of obtaining legal advice. SGB has not met its burden to show that any communications it passed through Reed Hein to the timeshare owners are protected by the attorney client privilege because the timeshare owners dealt with Reed Hein, a non-law firm, not SGB, regarding this particular category of communications.

SGB did meet its burden regarding communications it made directly with the timeshare owners after it changed its relationship with Reed Hein and began communicating only with the individual timeshare owners. For example, SGB filed a client declaration regarding its relationship with one client, and the Court considers the declaration, despite Diamond's objections, because it shows that at least one of SGB's clients had direct communications with SGB. SGB also presented evidence and made arguments at the hearing sufficient to show that its relationship with Reed Hein changed at some point, and it began having direct communications with the timeshare owners for the purpose of giving them legal advice, and engaging in litigation on their behalf in some instances. SGB presented evidence that it obtained local counsel for the purpose of engaging in litigation in Nevada for individual timeshare owners. The Court thus finds that any communications that SGB had directly with timeshare owners and

local counsel (if the content of the communication was not disclosed to Reed Hein) are protected by the attorney-client privilege. Both Privett and SGB concede that no attorney-client relationship exists between them and Reed Hein, thus the Court finds that any communications between SGB/Privett and Reed Hein are not protected by attorney-client privilege. SGB and Privett did not present any evidence at the hearing regarding communications they may have had with each other: The Court thus finds that Privett and SGB have not carried their burden regarding communications with each other and must produce any communications it had with each other, if any.

At the hearing, the Court noted that the privilege logs pertain to thousands of documents. Thus if there is a category of documents in either of the privilege logs that the Court has not addressed in this order, or if the parties need clarification regarding any part of the Court's ruling regarding the privilege logs, the parties may submit a joint stipulation, of no more than five pages total, within two weeks presenting (1) each party's position on that category of document; and (2) whether the Court needs to hold an evidentiary hearing regarding that category of document.

### iv.   Discussion: Work-Produce Doctrine

Regarding work-product, attorney Privett and law firm SGB both limited their legal services and specified that their services did not include litigation, but the agreements did not completely preclude litigation because the timeshare owners could have engaged the attorneys, per the terms of the agreements, to represent them at a later time (as it appears some timeshare owners retained SGB to represent them in litigation). The work product doctrine is an immunity that protects an attorney's mental impressions: the retainer agreements note that representation is limited but certain mental impressions (such as documents advising the clients regarding litigation prospects) would still be protected by the work product doctrine. Litigation need not necessarily be imminent if the primary purpose behind the creation of the document was to aid in possible litigation. See *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981) (citations omitted). SGB and Privett's business relationship with

Reed Hein supports a finding that they shared documents with Reed Hein as part of that business relationship and not for the purpose of advising clients regarding potential litigation. SGB and Privett have not met their burden regarding documents they withheld based on the work product doctrine regarding any documents they shared with Reed Hein. Any documents SGB and Privett shared with Reed Hein are not confidential or prepared in anticipation of litigation.

Both SGB and Privett have carried their burden regarding withholding a different category of documents as protected by the work product doctrine: any documents SGB and Privett produced internally or shared with the timeshare owners directly (i.e. only documents they did not share with Reed Hein); or shared with local counsel are protected by the work-product doctrine. SGB only represented some timeshare owners in litigation and Privett did not represent any clients in litigation: however, SGB and Privett both prepared documents for the purpose of pre-litigation negotiation, and if SGB and Privett did not share those documents with Reed Hein, the Court finds that SGB and Privett prepared those documents with a litigation-purpose in anticipation of litigation. The Court grants and denies the motions to compel (ECF Nos. 252 and 272) in part. The Court grants the motion for leave to file the exhibit (ECF No. 316) and grants the stipulation for an extension of time on the briefing schedule for this motion. (ECF No. 331).

### A. Diamond's First Motion for Sanctions Against Reed Hein (ECF No. 264); Diamond's Second Motion to Compel Defendant Reed Hein (ECF No. 284) and Diamond's Motion for Sanctions (ECF No. 289).

#### i. Parties' Arguments Re: Diamond's First Motion to Compel (ECF No. 264)

Diamond argues in its motion to compel and for sanctions that defendant Reed Hein must be compelled to respond to (a) Interrogatory No. 1 of the third set of interrogatories and produce documents responsive to (b) Request No. 2 of the first request for production; (c) Requests Nos. 2, 3, 5, 6, and 9 of the second request for production; (d) Requests Nos. 1-5, 7 and 9 of the third request for production; and (e) Requests Nos. 9-21, 24-28, 32, 102-113, 116-122, and 136-141 of the fourth request for production.

(ECF No. 264 at 2). Diamond seeks discovery regarding Reed Hein's customers, its agreements with celebrity endorsers, its agreements with its attorneys, information regarding it customers, and documents that Reed Hein produced to the Washington AG or other government agencies. (*Id.*, throughout). Diamond also asks the Court to appoint a special master to oversee ESI discovery; order that Reed Hein will pay for the special master as a sanction; and award Diamond the fees and cost incurred in bringing this motion. (*Id.*)

Reed Hein argues in its response that it has already produced large volumes of discovery to Diamond; that Diamond voluntarily reduced the scope of its damages in this litigation to a defined set of 366 owners; that Diamond's discovery requests are overbroad and a fishing expedition because it seeks discovery outside of those 366 owners. (ECF No. 282 at 3). Reed Hein also argues that its agreements with third-party endorsements are irrelevant regarding whether its advertisements are false or misleading. (*Id.* at 3). Reed Hein also argues Diamond has not shown why it needs its employee records other than its vague allegations potential bias. (*Id.*)  Reed Hein argues that it has fully complied with discovery and there is no reason to appoint a special master or sanction it. (*Id.*) Diamond argues in its reply that Reed Hein has produced everything that it says it has because it found evidence it did not produce from the Washington AG. (ECF No. 302 at 3).

### ii.    Discussion Re: The First Motion to Compel

"Unless otherwise limited by court order, the scope of discovery" extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The rule identifies six factors regarding proportionality: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) and whether the burden and expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P 26(b)(1).

"The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome." *United States ex rel. Luke v. Healthsouth Corp.*, No. 213CV01319-APG-VCF, 2018 WL 3186941, at 9 (D. Nev. June 28, 2018). To meet this "heavy burden," the resisting party must assert "(1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request." *Daisy Tr. v. JP Morgan Chase Bank., N.A.*, No. 213CV00966RCJVCF, 2017 WL 3037427, at 2 (D. Nev. July 18, 2017); *F.T.C. v. AMG Servs., Inc.*, No. 212-CV-536-GMN-VCF, 2015 WL 176417, at 2 (D. Nev. Jan. 14, 2015). Boilerplate responses are devoid of any meaningful information and, therefore, are "tantamount to making no objection at all." *Collins v. Landry's Inc.*, No. 2:13-CV-1674-JCM-VCF, 2014 WL 2770702, at 3 (D. Nev. June 17, 2014).

### 1) Discovery regarding Reed Hein Customers, its Celebrity Endorsement Agreements, and Investigations of Reed Hein

Reed Hein argues that it has already produced everything it has regarding the following disputed requests and interrogatories regarding the 366 identified owners. Reed Hein argues that it would be costly and time-consuming to compile this information and that it would need to hire an outside vender to do so. Reed Hein argues the above discovery requests are not proportional and overbroad (it made specific objections to each request in the first through third sets, this is my summary of their arguments).

Reed Hein also argues that Diamond has blocked Reed Hein from taking discovery outside the 366 customers, and to allow Diamond this discovery would compound the discovery process. Reed Hein has agreed to make some reasonable supplements to their responses and is in the process of doing so. Diamond argues that it needs discovery outside of the 366 owners because it seeks injunctive relief.

The Court finds that discovery outside of the 366 customers is not proportional to the needs of the case because Diamond has limited its claims to these customers. Diamond will not be prejudiced because it may still seek an injunction without taking discovery regarding customers not at issue in this

action. Reed Hein's objections are sustained because Reed Hein has already produced discovery regarding the following written discovery requests for the 366 identified owners. The Court denies Diamond's request to obtain discovery outside of the 366 customers.  Reed Hein has also agreed to supplement these responses: thus Reed Hein has two weeks from the date of this order to supplement its responses  to the following written discovery requests, consistent with the Court's findings that it need only respond regarding the 366 identified owners.

Interrogatory No. 3 is a four-part interrogatory that relates to Reed Hein's software data. (ECF No. 264 at 9). It seeks data to show the dates Reed Hein's clients contracted with Reed Hein, how much each client paid, contract numbers so Diamond can cross reference the contracts with their requests for production, and the earliest dates of contact Reed Hein had with each client. (*Id*.). Request for Production No. 1 from the third requests for production also seeks documents from Reed Hein's databases regarding its customers. Reed Hein has agreed to supplement its responses and the Court has set a deadline and parameters for Reed Hein to do so.

Request for Production Nos. 2, 3, and 5 from the second requests for production seek customer communications, documents it sent to its customers, and the complete file for each customer. (ECF No. 264 at 11). Diamond argues that Reed Hein has produced documents in response to these requests for productions, but since Reed Hein produced the documents "subject to" is objections that the requests are unproportional and vague, Diamond does not know if there are any "gaps" in production. (*Id*. at 13).

The Court sustains Reed Hein's objections to request for Production Nos. 2, 3, and 5 from the second requests for production because Reed Hein both objected and responded to these requests in good faith and  (i.e. Reed Hein responded and produced documents: there is no indication that Reed Hein has "gaps" in its production and did not produce relevant documents).

Request Nos. 119-122 seeks copies of complaints, judgments, settlements, and any other proceeding that Reed Hein has been involved in on behalf of its customers. (ECF No. 264 at 23). The

13

Court sustains Reed Hein's objections because Reed Hein has already produced responses regarding the 366 identified owners and the Court has set a deadline regarding supplementation.

Request Nos. 3, 4, and 5 from the third requests for production seek communications between Reed Hein and third-party Dave Ramsey or the Lampo Group, LLC, communications between customers and Reed Hein about their complaints to Ramsey, and any policies or procedures about customer complaints to Ramsey. (ECF No. 264 at 17). Request Nos. 7 and 9 seek information about customers that posted negative reviews or how Reed Hein monitored for negative reviews. Request Nos 102, 104-113 seek information about complaints customers lodged with the BBB, any state Attorney General, or the government. (*Id*. at 21). (Diamond alleges it received some of the complaints from the AG. (*Id*.)).

The Court finds that Diamond's allegation that Reed Hein has not complied with discovery regarding these requests because it received discovery from a third-party that Reed Hein did not produce lacks merit. Reed Hein has engaged in the discovery process in good faith. Diamond has sought a large volume of discovery and there is no evidence that Reed Hein has evaded its duties or hid evidence from Diamond. Reed Hein is ordered to supplement its responses consistent with the parameters and deadline set in this order. Diamond will not be prejudiced by this finding because Diamond already obtained this discovery from a third-party.

Request Nos. 2 and 103 from the third set of requests seeks production of everything Reed Hein produced to the AG. Request Nos. 116-118 seek documents Reed Hein may have produced regarding any other governmental investigation. Reed Hein has produced documents regarding the 366 identified owners but argues that the additional documents it produced to the AG are pre-suit investigation documents that are not proportional or relevant to Diamond's claims. Diamond argues that the AG is pursing Reed Hein based on complaints of fraud, which overlaps with Diamond's claims against Reed Hein. The Court sustains Reed Hein's proportionality objections and finds that pre-suit investigation

14

documents that do not pertain the 366 identified owners are not proportional or relevant to Diamond's claims.

Request No. 9 from the Second requests for production seeks documents regarding celebrity endorsements of Reed Hein's services. Reed Hein argues that the celebrity endorsement agreements are not proportional or relevant to Diamond's claims because it has already produced all its marketing materials (in relation to its false advertising claims) and that the agreements are merely a fishing expedition. The Court grants Diamond's request for the celebrity endorsement agreements pursuant to the protective order because the agreements could contain information that is relevant to Diamond's false advertising claims, since the celebrity endorsements are part of Reed Hein's marketing campaigns. Reed Hein has two weeks from the date of this order to produce any documents it intends to supplement.

**2) Discovery regarding Reed Hein's Agreements with its Attorneys, its Employees, and its Policies**

Request No. 2 from the first requests for production and Request No. 32 from the third requests for production seek agreements and negotiations regarding agreements Reed Hein had with its attorneys. (ECF 264 at 10). Reed Hein produced redacted agreements and argued that the agreements are protected by attorney-client privilege. (*Id.*) Diamond argues that it has all the unredacted agreements already from the attorney general, so it can prove that what Diamond redacted is not protected by attorney-client privilege. (*Id.*) Reed Hein argues this point is moot because Diamond already has all the agreements in unredacted form (from the AG). Reed Hein says it will produce the agreements in unredacted form and it will produce the communications now that there is a protective order. The Court thus grants Diamond's request to compel these documents/responses given that Reed Hein has agreed to it and Reed Hein has two weeks to comply.

Request No. 6 seeks "official policies and procedures. (*Id.* at 14). Diamond argues it knows Reed Hein did not make a complete production of these materials because it obtained additional policies and procedures from the Attorney General. (*Id.*). Reed Hein argues that it has responded to this request in

full and the documents Diamond refers to that it obtained from the AG (the "FAQ Documents") is a cheat sheet that its employees use, it's not a policy and procedure, and did not come up in Reed Hein's original document search. (ECF No. 282 at 9). Reed Hein also alleges there is no bad faith because it produced this exact document in response to another lawsuit Diamond's counsel brought against it and it had no reason to "hide" this document. (*Id.*) The Court denies Diamonds' request regarding No. 6. There is no harm here, Reed Hein has shown that it did not engage in bad faith by not producing the FAQ Documents in response to Request No. 6 and it alleges it has already responded to this request in full.

Request Nos. 9, 10-21, 24-28, 136-141 from the third requests for production all seek information and documents related to Trever Hein's separation from Reed Hein and other potentially "biased" employees who may be trial witnesses, including but not limited to non-disclosure agreements, termination records, and severance payments. (ECF No. 264 at 20).

Reed Hein argues its employee records are irrelevant to this litigation and Diamond's grounds, to investigate "potential bias" is improper. (ECF No. 282 at 18).  Reed Hein argues that Diamond has not shown a compelling need per Rule 26 to test their employee witnesses' credibility. Reed Hein also argues that it has not yet deposed all its witnesses and that it can test their credibility during the depositions. (*Id.*). The Court sustains Reed Hein's objections. Diamond has not shown a compelling need to test any of Reed Hein's employees at this stage. Diamond will not be prejudiced because it may test the employees' credibility during their depositions.

### 3) Sanctions and Special Master

Diamond argues that Reed Hein has compounded the proceedings with their frivolous objections and that as a sanction the Court finds order Reed Hein to pay for a special master to oversee discovery. Reed Hein argues they have complied with discovery in good faith. Reed Hein has not violated any Court orders and their objections are not meritless. Diamond has sent out hundreds of discovery requests and received thousands of pages of documents in return. Reed Hein has acted in good faith by working

to supplement its responses at every turn and it has complied with this Court's orders. The Court denies Diamond's request for sanctions and a special master.

### iii.   Parties' Arguments Re: Diamond's Second Motion to Compel and for Sanctions (ECF Nos. 284 and 289)

Diamond argues in its motion to compel and for sanctions that defendant Reed Hein must be compelled to (a) respond to Interrogatories Nos. 2-4, and 6 of the fourth set of interrogatories; (b) respond and produce documents responsive to Requests No. 30-44, 46-47, 49, 53, 57-59, 66, and 68 of the fourth request for production. (ECF No. 284 at 2). Diamond also asks for sanctions and again asks the Court to appoint a special master at Reed Hein's expense. (*Id.*)

Reed Hein argues in response that this motion to compel is duplicative, an extension of the first motion to compel, and part of Diamond's strategy to multiply the proceedings. (ECF No. 309 at 3). Reed Hein argues that it has worked to supplement its production, but that as it works on supplements, Diamond continues to serve it with hundreds of written discovery requests (at the time Diamond filed this motion, it had already served Reed Hein with its seventh set of requests for productions). (*Id.* at 5). Diamond argues in its reply that Reed Hein has not been clear about what it has produced and what it must supplement, thus it argues Reed Hein must be sanctioned. (ECF No. 333 at 2).

### iv.   Discussion Re: The Second Motion to Compel and for Sanctions

Interrogatories 2, 3, and 4 in the fourth set of interrogatories seek details regarding its client screening, its contractual obligations to its clients, and its strategies that it uses on behalf of its clients.

Diamond argues that all Reed Hein's responses are incomplete, and their objections are boilerplate. Diamond's motion is duplicative of its first motion in that it argues overall that Reed Hein's discovery responses are incomplete because Reed Hein responded to all the discovery requests subject to their objections. Reed Hein admits that not all of their objections to the fourth set of requests are as specific or complete as their objections were to the first, second, and third sets, but Reed Hein says that

Diamond has bombarded them with discovery requests while simultaneously filing multiple motions. (ECF No. 309 at 8).

Reed Hein's objections regarding Interrogatories 2, 3, and 4 have merit and are not boilerplate. For example, Reed Hein objects that Interrogatory No. 2 is unlimited in time. The Court finds that Interrogatory No. 2 is in fact unlimited in time. Like in the previous motion, the request is not limited to the 366 identified owners. (ECF No. 284 at 6-7). The Court narrows these interrogatories in time by five years and narrows the requests to 366 owners.

Interrogatory No. 6 seeks "all facts and legal bases" for each of the identified owners regarding whether the owners are excused from paying their mortgages. Reed Hein objects that the interrogatory is unduly burdensome because it seeks "every fact" and it improperly calls for a legal opinion. (ECF No. 284 at 9). It also objects that Diamond has exceeded 25 interrogatories, including discrete subparts. (*Id*., citing to *Kendall v. GES Exposition Servs., Inc*., 174 F.R.D. 684, 68586 (D. Nev. 1997). The Court sustains Reed Hein's objections to Interrogatory No. 6 because its objections are specific and tailored to this interrogatory. Reed Hein also provided a response to this interrogatory subject to its objections which is sufficient and shows that Reed Hein has engaged in the discovery process in good faith.

Request Nos. 30, 31, 32, 35, 36, 37, 38, 41, 42, 43, 47, 57, 58 seeks communications Reed Hein had both with and about attorneys Privett, Sussman, and SGB and related documents. Reed Hein responds that it is not aware of documented communications with Privett and Sussman, or about any of the attorneys, but reserves its right to supplement this response. Reed Hein produced the communications it had with SGB. Diamond argues that Reed Hein is being evasive and that it must produce these communications now if it has them. (ECF No. 284 at 17).

Reed Hein's objections to Request Nos. 30, 31, 32, 35, 36, 37, 38, 41, 42, and 43 are boilerplate because they are not specific. The objections cite only to Reed's general objections and state that Reed Hein will supplement at an unspecified time. (See Requests 30, 31, 32, 35, 36, 37, 38, 41, 42, and 43).

The Court considers Reed's arguments regarding the nature of these objections, that they are buried in discovery and are complying with their discovery obligations in good faith, since their earlier objections were all specific and tailored to each request. The Court finds that Reed Hein's objections to these requests are boilerplate and thus waived but gives Reed Hein the same two-week deadline to supplement if it has any additional documents to supplement here.

Request Nos. 33, 34, 39, and 40 seek documents regarding Reed Hein's management and communications it had regarding legal issues. Reed Hein's objection states that it will produce documents responsive to No. 33 and it will produce all non-privileged documents responsive to No. 34, 39, 40. Request Nos. 44, 46, 49, 53, 59 pertain to correspondence between Reed Hein's customers: Reed Hein states that it will produce documents in response to Request No. 44 and that it produced documents, within a five-year time frame, regarding 46 and 49. Reed Hein's objections to these requests are specific and reasonable. The Court sustains the rest of Reed Hein's objections above. Reed Hein has two weeks to supplement and documents it agreed to supplement.

Request Nos. 66 and 68 seeks documents regarding Reed Hein's communications with public figures. (ECF No. 284 at 24). Reed Hein argues that it already produced these documents to Diamond seven months ago but that it will do a search again and supplement if necessary. The Court finds that these requests are relevant to Diamond's claims. Reed Hein has two weeks to supplement these requests.

Although the Court deemed some of Reed Hein's objections to be boilerplate, the Court finds that Reed Hein has not acted in bad faith and is working diligently to comply with its discovery obligations given the volume of discovery Diamond seeks. The Court grants and denies the motions to compel and for sanctions in part. The Court denies Diamond's request for sanctions and request to appoint a discovery commissioner.

**B.  Motions to Seal**

      **i.   Discussion**

"Courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citations and quotations omitted).  There is "a strong presumption in favor of access." *Id*.  However, the public's right to access is "not absolute." *Id*.  A "particularized showing," under the "good cause" standard of Rule 26(c) will suffice to seal, "material attached to nondispositive (sic) motions." *Id*.  Pursuant to LR 7-2(d), when an opposing party does not file points and authorities in response to any motion it "constitutes a consent to the granting of the motion."

The parties filed motions to seal certain exhibits and portions of their briefing pursuant to the parties' protective order. These motions are nondispositive and the parties made a particularized showing under the good cause standard because the parties were selective and only requested to seal information covered by the protective order. All the parties consented because the motions to seal are unopposed. The Court grants all the motions to seal.

Accordingly,

IT IS ORDERED that plaintiff Diamond Resort's motions to compel (ECF No. 252, 264, 278, 284) and for a protective order (ECF No. 296) are granted in part and denied in part as detailed in this order.

IT IS FURTHER ORDERED that if there is a category of documents in either of the privilege logs that the Court has not addressed in this order, or if the parties need clarification regarding any part of the Court's ruling regarding the privilege logs, the parties may submit a joint stipulation, of no more than five pages total, within two weeks presenting (1) each party's position on that category of document; and (2) whether the Court needs to hold an evidentiary hearing regarding that category of document.

IT IS FURTHER ORDERED that the defendants have until Wednesday, November 18, 2020 to supplement their discovery responses as detailed in this order.

IT IS FURTHER ORDERED that Diamond Resorts' motion for sanctions (ECF No. 289) is DENIED.

IT IS FURTHER ORDERED that Diamond Resorts' motions to seal (ECF No. 254, 258. 266, 280, 286, 291, 304, 326, and 335) are GRANTED.

IT IS FURTHER ORDERED that defendant SGB's motion to seal (ECF No. 312) is granted.

IT IS FURTHER ORDERED that defendant SGB's motion for leave to file additional exhibit (ECF No. 316) is GRANTED.

IT IS FURTHER ORDERED that the parties' stipulation for an extension of time regarding the briefing schedule (ECF No. 331) is GRANTED.

DATED this 4th day of November 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE