# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

**\*\*\***

DIAMOND RESORTS U.S. COLLECTION
DEVELOPMENT, LLC, a Delaware Limited
Liability Company,

              Plaintiff,

vs.

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, a Washington
Limited Liability Company, *et al*,

              Defendants.

2:17-cv-03007-APG-VCF

**ORDER**

JOINT MOTION FOR CLARIFICATION [ECF NO.
351]

Before the Court are the parties' joint motion for clarification (ECF No. 351) regarding this Court's previous discovery order at ECF No. 342. In the Court's previous discovery order, it noted that, "the parties may submit a joint stipulation, of no more than five pages total, within two weeks presenting (1) each party's position on that category of document; and (2) whether the Court needs to hold an evidentiary hearing regarding that category of document." (ECF No. 242 at 23).

The Court has reviewed the motion for clarification and appreciates the parties' working together in good faith to sort out most of the issues they had previously raised. The Court clarifies parts of the previous order here and sets a video hearing regarding other parts of the joint motion. The video hearing will not be an evidentiary hearing but will be an opportunity for the parties to argue a few discrete issues as detailed in this Order and ask any additional questions, if any. The parties presented the Court with the following four categories of issues.

## I.    Privilege Logs

### a.    Subject-Matter Waiver

The Court found in the previous order that when SGB stopped communicating with Reed Hein

and "began communicating only with the timeshare owners," that those communications are privileged. (ECF 342 at 8-9). ("The Court thus finds that any communications that SGB had directly with timeshare owners and local counsel (if the content of the communication was not disclosed to Reed Hein) are protected by the attorney-client privilege.") The parties seek clarification regarding Diamond's argument regarding subject-matter waiver of the attorney-client privilege. Diamond argues that waiver extends "to all other such communication on the same subject." *Roberts v. Clark Cty. Sch. Dist.*, No. 2:15-cv-00388-JAD-PAL, U.S. Dist. LEXIS 60995 (D. Nev. May 9, 2016). (ECF No. 351 at 3). SGB argues that only communications SGB shared with Reed Hein are subject to waiver and production under the Order because waiver only occurs when the specific communication at issue is made in the presence of unnecessary third parties or voluntarily disclosed.

The Court clarifies that only communications that SGB shared with Reed Hein are subject to waiver and production. The *Roberts* case is distinguishable because in that case the client, not the attorney, "waived any potential privilege by voluntarily disclosing the advice of its counsel relied upon to support its good-faith defense in this case." *Roberts,* 2016 U.S. Dist. LEXIS 60995 at 11. There is no subject-matter waiver here because the timeshare owners did not reveal the advice they received from SGB to Reed Hein: once SGB began to communicate directly with the timeshare owners, and SGB excluded Reed Hein from those communications, then those communications are protected by attorney-client privilege. There is no subject-matter waiver here.

### b.  Work Product Claims

The parties explain in their joint motion that the SGB and Privett, "categorized a substantial portion of their communications as protected by the work product doctrine, primarily comprised of internal communication." The parties seek clarification regarding two categories of internal communications.

### i.   Internal communications that do not address litigation or negotiation

The parties do not agree regarding whether SGB and Privett's internal communications that do not address litigation or pre-litigation negotiation are protected by the work product doctrine. The Court found that, "SGB and Privett both prepared documents for the purpose of pre-litigation negotiation[.]" (ECF No. 342 at 10). The Court also held in the previous order that, "[b]oth SGB and Privett have carried their burden regarding withholding…documents as protected by the work product doctrine [if they] produced [the documents] internally or shared [the documents] with the timeshare owners directly (i.e. only documents they did not share with Reed Hein). (*Id.*) The Court noted in the previous order that the work product doctrine protects the attorneys' mental impressions and litigation need not be imminent if the primary purpose behind the creation of the document was to aid in possible litigation. (*Id.* at 9).

The parties contend that there are internal communications that do not fit neatly in this analysis because the communications do not address litigation or pre-litigation negotiation. The parties did not provide examples of these communications. Since the Court recognizes there is probably some gray area here (and the Court would prefer not to guess regarding the substance of the communications at issue) the Court asks the parties to prepare examples of these communications and present arguments regarding these communications at the video hearing.

### ii.   Communications post-dating an express determination that the attorney would not litigate on behalf of the client, until any reconsideration of the same

The parties disagree regarding whether communications post-dating an express determination that the attorney would not litigate on behalf of the client are protected. The Court clarifies that an express determination that the attorney would not litigate (as noted in the retainer agreements) is irrelevant since SGB and Privett engaged in pre-litigation negotiation on behalf of the clients, even if they themselves did not agree to litigate the case at the outset. The attorneys' analysis could have been used later in litigation and SGB did later agree to litigate on behalf of some of their clients. SGB and Privett have met their burden regarding communications and documents that contain their mental

impressions and analysis of the case, regardless of the date they prepared the document or communication, if they did not share the document or communication with Reed Hein. The Court will address examples of internal communications at the hearing (as noted in part i above) if the parties have questions regarding the content of the communications, but the date of the communication, for the purposes of the work product doctrine in this case, is irrelevant.

## II.     Salesforce Customer Data

The Court notes in the Order that "Reed Hein has agreed to supplement its responses" but Reed Hein contends that the Court misinterpreted its position regarding the Salesforce data. The Court will hear arguments regarding the Salesforce data at the video hearing.

## III.     Reed Hein's Responses to Nos. 2 – 4 of the Fourth Set of Interrogatories

The parties note that requests Nos. 2-4 of Diamond's Fourth Set of Interrogatories request that Reed Hein explain its "exit" methods. The Court found in the previous order that Reed Hein's objections to Interrogatories 2-4 were not boilerplate and the Court clarifies that it sustains Reed Hein's objections to these interrogatories. The Court also narrowed these interrogatories in time by five years and narrowed the requests to the 366 individual owners. Reed Hein provided narrative responses that are within these parameters and the Court clarifies that Reed Hein's responses are also not vague or unresponsive. Diamond is not prejudiced by this finding because it may ask questions regarding these topics in depositions.

## IV.     SGB's Subpoena and Requests 47, 53, 57, 58, and 59

The Court granted Diamond's motion for a protective order in part but omitted a discussion of SGB's subpoena. The Court did not omit a discussion of Requests 47, 53, 57, 58, and 59, but the Court's discussion of these requests could have been clearer. The Court clarifies as follows.

### a.   SGB's Subpoena

In Diamond's motion for a protective order, it argues that SGB intends to serve a subpoena to

4

nonparty the American Resort Development Association ("ARDA") which Diamond contends is overbroad and irrelevant. (ECF No. 296 at 2). The subpoena seeks discovery regarding approximately 30 topics, but Diamond only objects to the requests that relate to (1) other lawsuits Diamond and any other timeshare developer has filed, and (2) any complaints to ARDA about Diamond that did not come from the identified owners. (ECF No. 296-1).

SGB argues that these topics are relevant to its unclean hands defense because Diamond seeks injunctive relief against SGB regarding its legal services, but Diamond allegedly works with ARDA regarding its "exit program" that exists to upsell consumers who no longer want their timeshares. (ECF No. 307 at 3). SGB argues that it seeks information outside of the 366 identified owners because Diamond seeks injunctive relief so complaints from any owner about Diamond would be relevant to its defense. (*Id.*)

Diamond argues in its reply that it does not object to ARDA producing communications about (1) SGB, or (2) the allegations in this lawsuit. (ECF No. 313 at 1). Diamond also argues that complaints about diamond unrelated to the identified owners are irrelevant. (*Id.* at 6).

Rule 26(b)(1) authorizes the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." While a party cannot move to quash a subpoena on the basis that it seeks irrelevant documents, "[a] party can, however, move for a protective order in regard to a subpoena issued to a nonparty if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issues to non-parties which seek irrelevant information." *Proficio Mortg. Ventures, LLC v. Fed. Sav. Bank*, 2016 WL 1465333, at 2 (D. Nev. Apr. 14, 2016) (citing *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.,* 2007 WL 119148 at 4 (D. Nev. Jan. 9, 2007).

5

Diamond has demonstrated that the subpoena seeks information that is both irrelevant and overbroad. As noted in the previous order, the Court grants Diamonds' request for a protective order regarding the subpoena in part. The Court limits SGB's request regarding other lawsuits that Diamond and any other timeshare developer has filed to (1) this lawsuit and communications about this lawsuit; and (2) lawsuits that involve the 366 identified owners, if any. SGB will not be prejudiced by this limitation because lawsuits are public documents and SGB can obtain this information through the public record. The Court also limits SGB's requests for complaints to ARDA about Diamond to complaints from the 366 identified owners because complaints outside the 366 owners are both irrelevant and overbroad. This holding is consistent with the Court's previous holdings regarding what information Diamond can seek from the defendants.

### b.  Requests 47, 53, 57, 58, and 59

The parties argue in their motion that the Court omitted a discussion of "Requests 47, 53, 57, 58, and 59 of Diamond's Second Requests for Production." (ECF No. 351 at 6). The Court discussed Request Nos. 47, 57, and 58 as a category of requests that seek, "communications Reed Hein had both with and about attorneys Privett, Sussman, and SGB and related documents." (*Id.* at 18). The Court noted that Reed Hein responded that it is not aware of any documented communications with Privett and Sussman, or about any of the attorneys, but it reserved its rights to supplement. The Court cannot compel Reed Hein to produce documented communications it does not have, but it gave Reed Hein, "until Wednesday, November 18, 2020 to supplement their discovery responses[.]" (*Id.* at 21).

The Court similarly discussed Request Nos. 53 and 59 as a category of documents that pertains, "to correspondence between Reed Hein's customers[.]" (*Id.* at 19). When the Court, "sustain[ed] the rest of Reed Hein's objections above" it clarifies that it sustained Reed Hein's objections to Request No. 53. Reed Hein adequately responded to Request No. 53, except that it "reserved its right to supplement[.]" The Court also clarifies that Reed Hein's objection to Request No. 59 is identical to the

6

objections that the Court found to be boilerplate; the Court intended to include Request No. 59 in that group (see *Id.* at 18) because Reed Hein's objections to Request No. 59 are general and not specific; i.e. the objections are general and state that Reed Hein will supplement at an unspecified time. The Court gave, "Reed Hein has two weeks to supplement[.]" (*Id.* at 19).

Since this portion of the Order was not clear, Reed Hein has an additional two weeks to supplement its responses to Requests 47, 53, 57, 58, and 59, if any.

**V.      Conclusion**

The Court hopes that this Order clarifies most of the issues the parties raised in their joint motion. The Court will hear arguments regarding examples of internal communications that may or may not be protected by the work-product doctrine and about the Salesforce data at the video hearing. The parties are free to seek further clarification regarding the issues it presented in this motion, if needed, at the video hearing.

Accordingly,

IT IS ORDERED defendant Reed Hein has until Monday, December 7, 2020 to supplement their discovery responses, if any, to Requests 47, 53, 57, 58, and 59.

IT IS FURTHER ORDERED that a video conference hearing on the parties' motion for clarification (ECF No. 351) on the issues detailed in this Order is scheduled for 1:00pm on Friday, December 4, 2020.

IT IS FURTHER ORDERED that counsel/the parties must email Courtroom Administrator, Tawnee Renfro at Tawnee_Renfro@nvd.uscourts.gov, with an email address to be used for the video conference hearing by noon, December 3, 2020.

IT IS FURTHER ORDERED that the following Video Conference Instructions be adhered to as follows:

INSTRUCTIONS FOR THE VIDEO CONFERENCE

1    Instructions to the scheduled hearings will be sent via email thirty (30) minutes prior to

2  the hearing to the participants email provided to the Court.

3        • Log on to the call ten (10) minutes prior to the hearing time.

4        • Mute your sound prior to entering the hearing.

5        • Do not talk over one another.

6        • State your name prior to speaking for the record.

7        • Do not have others in the video screen or moving in the background.

8        • No recording of the hearing.

9        • No forwarding of any video conference invitations.

10        • Unauthorized users on the video conference will be removed.

11    DATED this 23rd day of November 2020.

12

13                                        _____

14                                        CAM FERENBACH
                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25